# IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**FILED**

**October 24, 2025**

ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**BOBBY SNELSON,**
**Claimant Below, Petitioner**

**v.)  No. 25-ICA-202**          (JCN: 2021002280)

**BOBBY SNELSON BOB'S PAINTING,**
**Employer Below, Respondent**


## MEMORANDUM DECISION

Petitioner Bobby Snelson appeals the April 14, 2025, order of the Workers' Compensation Board of Review. Respondent Bobby Snelson Bob's Painting ("Bob's Painting") timely filed a response.[1] Mr. Snelson did not reply. The issues on appeal are whether the Board erred in affirming the claim administrator's orders, which (1) denied compensability of right shoulder pain, right shoulder rotator cuff tear, and right shoulder SLAP tear, and (2) denied authorization for a right shoulder arthroscopic rotator cuff repair, labral debridement, and possible biceps tenodesis.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2024). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the Board's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

On August 5, 2020, Mr. Snelson was seen by Nick Zervos, M.D., at Mon Health Medical Center. Mr. Snelson reported that he was painting on a metal roof earlier that day, when he slid off of the roof and fell onto his right wrist and right knee. Dr. Zervos assessed right distal radius intra-articular comminuted fracture with extension into the shaft, as well as a right patella displaced fracture. On the same date, Mr. Snelson underwent a right distal fracture open reduction internal fixation with Synthes distal radius plate, and right patella fracture open reduction internal fixation with 4.0 cannulated screws and a tension band. The postoperative diagnosis was right displaced comminuted intra-articular distal radius fracture with four fragments and right displaced patella fracture.

On October 14, 2020, Mr. Snelson followed up with Dr. Zervos for a post-operative visit regarding his right patella and right distal radius fractures. Mr. Snelson reported

---

[1]Mr. Snelson is represented by J. Thomas Greene, Jr., Esq., and T. Colin Greene, Esq. Bob's Painting is represented by Jeffrey M. Carder, Esq.

bilateral knee pain, but stated that overall, he was doing well. Dr. Zervos noted that Mr. Snelson had full range of motion in both knees, and some pain over the prepatellar bursae of both knees. Examination of Mr. Snelson's right wrist showed good range of motion with minimal complaints of pain. Dr. Zervos noted that x-rays of the right wrist and right knee showed good early healing. Dr. Zervos assessed a right distal radius and patella fracture with open reduction internal fixation.

Mr. Snelson completed an Employees' and Physicians' Report of Occupational Injury form dated August 14, 2020. Mr. Snelson indicated that he sustained an injury to his right arm and knee while at work on August 5, 2020, when he fell off a metal roof. Per the physicians' section, Mr. Snelson sustained a right distal radius fracture as a direct result of an occupational injury. On August 24, 2020, the claim administrator held the claim compensable for right arm fracture/right distal radius fracture.

Mr. Snelson followed up with Dr. Zervos regarding his right knee on March 31, 2021. Mr. Snelson reported that both knees were bothering him and that he had some parascapular pain in the right shoulder and headaches. Dr. Zervos noted that both knees had full range of motion. Further, Dr. Zervos indicated that Mr. Snelson had right trapezial pain, discomfort, and spasm. Dr. Zervos assessed right knee pain with possible hardware pain and meniscal pathology, and right parascapular pain and spasm.

Joseph Grady II, M.D., performed an independent medical evaluation ("IME") of Mr. Snelson and issued a report dated May 20, 2021. Mr. Snelson reported discomfort in the right knee and right shoulder and stated that he fell off a roof while working as a commercial painter. Dr. Grady assessed status post open reduction internal fixation of right distal radius fracture and status post open reduction internal fixation of right patellar fracture. Dr. Grady opined that there was no indication that Mr. Snelson sustained a trapezius injury based on the medical records dating back to August 5, 2020. Dr. Grady did not exclude the possibility that Mr. Snelson sustained a trapezius strain on August 5, 2020, but he could not relate Mr. Snelson's current symptoms to the possible trapezius strain. Dr. Grady indicated that Dr. Zervos' request for removal of the hardware from the patellar fracture of the right knee and arthroscopy of the right knee was reasonable. Dr. Grady placed Mr. Snelson at maximum medical improvement ("MMI") for the right distal radius fracture but indicated that he was not at MMI for the right knee if he was going to have the hardware removal and arthroscopic assessment. Dr. Grady indicated that he would hold off on an impairment rating for the right knee. For the right wrist injury, Dr. Grady assessed 0% upper extremity impairment using the American Medical Association's *Guides to the Evaluation of Permanent Impairment* (4th ed. 1993).

On June 8, 2021, the claim administrator issued an order that authorized the removal of hardware and arthroscopy of the right knee to evaluate for meniscus pathology. On July 14, 2021, the claim administrator issued an order that denied Dr. Zervos' request to add

neck and right shoulder pain to the claim based on Dr. Grady's IME report. No protest was filed to this order.

Mr. Snelson followed up with Dr. Zervos on July 14, 2021, regarding his right leg hardware removal and arthroscopy. Dr. Zervos indicated that his physical exam showed pain in the trapezius region and across the paracervical neck, as well as decreased range of motion and pain to palpation. Dr. Zervos recommended an MRI of the neck to evaluate for a pinched nerve radiating down into the shoulder region.

Dr. Grady completed a second IME of Mr. Snelson and issued a report dated December 21, 2021. Mr. Snelson reported discomfort in the area of his right knee, and in the area on the right side of his neck extending up into his head. Dr. Grady noted that Mr. Snelson did not report symptoms involving the right shoulder. Dr. Grady assessed status post open reduction and internal fixation and subsequent hardware removal from right knee patellar fracture; status post open reduction internal fixation of right wrist distal radius fracture; resolved left knee abrasion without any subsequent reported symptoms; and reported history of transient right shoulder discomfort with labral tear, rotator cuff and biceps stenosis, and AC degenerative joint disease on MRI.

Dr. Grady opined that there was no need for an MRI of the left knee, because Mr. Snelson stated that he was not having any symptoms in that area and there was no indication of any abnormality of the left knee on physical examination. Regarding the right shoulder MRI, Dr. Grady stated that based upon the available information, Mr. Snelson would not require further orthopedic treatment with Dr. Zervos regarding the right shoulder. Dr. Grady noted that the MRI did reveal some internal derangement of the right shoulder, and that he could not exclude the possibility of a labral tear as a consequence of the fall on August 5, 2020. However, Dr. Grady noted that Mr. Snelson's symptoms were not manifesting in his right shoulder, and that his range of motion was normal.

On April 5, 2022, Mr. Snelson followed up with Dr. Zervos regarding his right upper extremity fracture and right patellar fracture. Mr. Snelson reported that he was doing well, had no complaints, and was back to full duty. Upon examination, Mr. Snelson's wrist had good range of motion and good strength. His knee also had full range of motion. There was mild discomfort to compression of the patella, but no swelling. Dr. Zervos assessed improving injuries from falling off a roof with a fractured wrist and patella, placed Mr. Snelson at MMI for the compensable injuries, and discharged him from the clinic.

On May 3, 2022, the claim administrator closed the claim, on the basis that Mr. Snelson did not require any additional treatment for his injury. The claim administrator noted that Mr. Snelson was discharged from medical treatment for his work injury.

On July 2, 2023, Mr. Snelson underwent an MRI of the right shoulder. The impression was mild rotator cuff tenodesis without retracted tear or atrophy;

3

acromioclavicular arthrosis, lateral down sloping of the acromion and minimal subacromial bursitis; degenerative SLAP tear; and mild to moderate tendinosis of the intraarticular segment of the long biceps tendon, no tear.

On September 5, 2023, Mr. Snelson was again seen by Dr. Zervos regarding his right shoulder. Dr. Zervos assessed status post fall with a right shoulder injury with rotator cuff tearing and labral tearing. Further, Dr. Zervos noted that once Mr. Snelson started using his right arm again after the surgical open reduction internal fixation of his wrist and patella fracture, his shoulder pain worsened. Dr. Zervos recommended that the claim be reopened for an arthroscopic rotator cuff repair, labral debridement, and possible biceps tenodesis. Dr. Zervos opined that Mr. Zervos' continued pain was due to his fall on the right side and should be covered under workers' compensation.

Dr. Zervos completed a Diagnosis Update form dated January 8, 2024. Dr. Zervos requested that right shoulder pain, right shoulder rotator cuff tear, right shoulder SLAP tear, and right distal radius fracture be added to the claim as compensable conditions.

On April 2, 2024, Mr. Snelson was deposed regarding his claim, and testified that on August 5, 2020, he was painting a house, and while working on a second-story roof, he slipped off that roof, fell twenty-five feet onto another roof, and fell from there onto the ground about fifteen feet below. Mr. Snelson testified that after the injury, he was treated by Dr. Zervos, who performed surgery on his right arm and right knee. Mr. Snelson testified that after his injury he did not have any right shoulder problems. However, Mr. Snelson stated that about a week after surgery, he began having shoulder pain and headaches. Mr. Snelson indicated that he returned to work after the surgery by Dr. Zervos, and the issues with his shoulder became progressively worse.

By order dated May 28, 2024, the claim administrator denied Dr. Zervos' request that right shoulder pain, right shoulder rotator cuff tear, right shoulder SLAP tear, and right distal fracture be added as compensable conditions in the claim. The claim administrator stated that based on the medical evidence in the claim file, these conditions are not causally related to the injury sustained on August 5, 2020. Mr. Snelson protested this order to the Board.

Kenneth Fortgang, M.D., completed an Age of Injury Report dated December 5, 2024. Dr. Fortgang reviewed the MRI of the right shoulder dated December 10, 2021, and agreed with the findings of the MRI of rotator cuff tendinosis with partial-thickness tears of the supraspinatus and subscapularis tendons; SLAP tear; biceps tendinosis; and AC degenerative arthrosis. Dr. Fortgang completed a second Age of Injury Report dated December 10, 2024, in which he reviewed the MRI of the right shoulder dated July 8, 2023. Dr. Fortgang agreed with the MRI findings of post susceptibility artifact likely related to surgery; rotator cuff tendinosis with partial thickness undersurface distal subscapularis

tendon tear; biceps tendinosis; and SLAP tear. Dr. Fortgang opined that these findings were all chronic.

By order dated April 14, 2025, the Board affirmed the claim administrator's orders, which (1) denied compensability of right shoulder pain, right shoulder rotator cuff tear, and right shoulder SLAP tear, and (2) denied authorization for a right shoulder arthroscopic rotator cuff repair, labral debridement, and possible biceps tenodesis.[2] It is from this order that Mr. Snelson now appeals.

Our standard of review is set forth in West Virginia Code § 23-5-12a(b) (2022), in part, as follows:

> The Intermediate Court of Appeals may affirm the order or decision of the Workers' Compensation Board of Review or remand the case for further proceedings. It shall reverse, vacate, or modify the order or decision of the Workers' Compensation Board of Review, if the substantial rights of the petitioner or petitioners have been prejudiced because the Board of Review's findings are:
>
> (1) In violation of statutory provisions;
> (2) In excess of the statutory authority or jurisdiction of the Board of Review;
> (3) Made upon unlawful procedures;
> (4) Affected by other error of law;
> (5) Clearly wrong in view of the reliable, probative, and substantial evidence on the whole record; or
> (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

Syl. Pt. 2, *Duff v. Kanawha Cnty. Comm'n*, 250 W. Va. 510, 905 S.E.2d 528 (2024).

On appeal, Mr. Snelson argues that the Board was clearly wrong in affirming the claim administrator's order that denied the conditions of right shoulder rotator cuff tear and right shoulder SLAP tear, because Mr. Snelson had no right shoulder limitations or symptoms prior to his injury, and all of his limitations began shortly thereafter. Mr. Snelson also asserts that the claim administrator's order denying the request for a right shoulder arthroscopic rotator cuff repair, labral debridement, and possible biceps tenodesis was clearly wrong because it was based upon the right shoulder having been wrongly excluded from his claim. We disagree.

---

[2] However, the Board recognized a right distal fracture as a compensable condition in the claim.

Here, the Board found that Mr. Snelson did not establish that right shoulder pain, right rotator cuff tear, right shoulder SLAP tear, and right distal fracture were causally related to the injury sustained on August 5, 2020. Three elements must coexist in workers' compensation cases to establish compensability: (1) a personal injury, (2) received in the course of employment, and (3) resulting from that employment. Syl. Pt. 1, *Barnett v. Workmen's Comp. Comm'r*, 153 W. Va. 796, 172 S.E.2d 698 (1970); *Sansom v. Workers' Comp. Comm'r*, 176 W. Va. 545, 346 S.E.2d 63 (1986).

Upon review, we conclude that the Board was not clearly wrong in finding that Mr. Snelson did not establish by a preponderance of the evidence that the requested conditions were causally related to the compensable injury. Regarding the condition of right shoulder pain, the Board noted that pain is a symptom, not a diagnosis, and cannot be added to the claim as a compensable condition. *See Harpold v. City of Charleston*, No. 18-0730, 2019 WL 1850196, at *3 (W. Va. Apr. 25, 2019) (memorandum decision). Further, the Board found, with regard to the conditions of right shoulder rotator cuff tear, right shoulder SLAP tear, and right distal fracture, the evidence in the record is inconsistent and indicates no temporal relationship to the compensable injury. The Board noted that Dr. Zervos' report dated October 14, 2020, contained no information pertaining to the right shoulder but indicated that Mr. Snelson was back to work and climbing ladders. The Board also noted that the first indication of right shoulder symptoms was not made by Mr. Snelson until March 31, 2021, almost eight months after the compensable injury. Further, the Board found that Dr. Grady reported that Mr. Snelson did not have symptoms involving the right shoulder, and that physical examination revealed no apparent deformity and full range of motion.

Further, we conclude that the Board was not clearly wrong in finding that Mr. Snelson did not establish that the right shoulder arthroscopic rotator cuff repair, labral debridement, and possible tenodesis are medically related and reasonably required for the compensable injury. The claim administrator must provide medically related and reasonably necessary treatment for the compensable injury. *See* W. Va. Code § 23-4-3 (2005) and W. Va. Code R. § 85-20 (2006). Here, the Board found that because the right shoulder is not a compensable component of the claim, the request for a right shoulder arthroscopic rotator cuff repair, labral debridement, and possible biceps tenodesis is not causally related to the compensable injury.

As set forth by the Supreme Court of Appeals of West Virginia, "[t]he 'clearly wrong' and the 'arbitrary and capricious' standards of review are deferential ones which presume an agency's actions are valid as long as the decision is supported by substantial evidence or by a rational basis." Syl. Pt. 3, *In re Queen*, 196 W. Va. 442, 473 S.E.2d 483 (1996). With this deferential standard of review in mind, we cannot conclude that the Board was clearly wrong in affirming the claim administrator's orders, which (1) denied compensability of right shoulder pain, right rotator cuff tear, right shoulder SLAP tear, and

6

right distal radius fracture, and (2) denied authorization for a right shoulder arthroscopic rotator cuff repair, labral debridement, and possible biceps tenodesis.

Accordingly, we affirm the Board's April 14, 2025, order.

Affirmed.

**ISSUED:** October 24, 2025

**CONCURRED IN BY:**

Chief Judge Charles O. Lorensen
Judge Daniel W. Greear
Judge S. Ryan White